IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE ACTIQ SALES AND MARKETING PRACTICES LITIGATION | No. 07-cv-4492 |

## PLAINTIFFS' RESPONSE TO
## DEFENDANT'S SECOND NOTICE OF "SUPPLEMENTAL AUTHORITY"

### I.    INTRODUCTION

Cephalon has filed another notice of "supplemental authority," *Grandalski v. Quest Diagnostics Inc.,* issued on September 11, 2014.[1] *Grandalski* is not persuasive. First, the *Grandalski* plaintiffs failed to conduct any analysis of state law groupings to demonstrate satisfaction of Rule 23(b)(3), whereas Plaintiffs here have submitted an exhaustive analysis of state unjust enrichment law as required by the Third Circuit, and have demonstrated that common questions of law predominate for the Unjust Enrichment (Restatement) Class and the Unjust Enrichment (Appreciation) Class and that application of the laws by grouping is manageable. In addition, the *Grandalski* plaintiffs failed to demonstrate that the defendant created a harm as part of a scheme to defraud customers, whereas here Plaintiffs have submitted a detailed Proffer of Facts demonstrating that common questions of fact predominate with respect to Defendant's scheme to defraud by "market[ing Actiq off-label for non-cancer uses] aggressively with the intent that, as a result of their efforts, physicians will prescribe their product."[2] Accordingly, Plaintiffs' motion for class certification should be granted.

---

[1] 767 F.3d 175 (3d Cir. 2014).

[2] *In re Actiq Sales & Marketing Practices Litig*., 07-cv-4492, 2009 U.S. Dist. LEXIS 43710, at *9-10 (E.D. Pa. May 22, 2009).

- 1 -

## II.     BACKGROUND

### A.     *Grandalski v. Quest Diagnostics Inc*.

In *Grandalski*, the plaintiffs alleged that defendant Quest Diagnostics ("Quest") overbilled patients  after Quest performed physician-ordered medical tests, by billing the patient in excess of the amount approved by the patient's insurance provider for the patient's portion. [3]

Plaintiffs moved for certification of two nationwide classes under state consumer protection statutes.[4]  After performing a choice of law analysis, the district court decided that the laws of the class members' home states would apply.[5]  However, the district court held that the plaintiffs "had not carried their burden to show precisely how the statutes could be grouped into a few categories for litigation…."[6]  According to the district court, "Plaintiffs' request that the Court group claims … consists solely of citation to and brief discussion of the *AWP* opinion and an exhibit providing the National Consumer Law Center's 2009 analysis of the various state consumer fraud statutes."[7]  The district court further explained:

> Before reaching the result that Plaintiffs urge the Court to follow here, the AWP court stated that '[i]n proposing to certify a class requiring the application of the laws of numerous jurisdictions, plaintiffs must shoulder the herculean burden of conducting an extensive review of state law variances to demonstrate how grouping would work.' The Plaintiffs in this action have simply not met that burden.[8]

---

[3] *Grandalski*, 767 F.3d  at 177.

[4] *Id.* at 178.

[5] *Id.*

[6] *Id.*

[7] *Agostino v. Quest Diagnostics, Inc*., No. 04-4362(SRC), 2010 U.S. Dist. LEXIS 135310, *36 (D.N.J. Dec. 22, 2010).

[8] *Id.,* at *38 (quoting *In re Pharmaceutical Industry Wholesale Price Litigation*, 252 F.R.D. 83, 85-86 (D. Mass. 2008)).

Moreover, with respect to Plaintiffs' unjust enrichment claims, the district court held that

factual issues of liability did not predominate and that one of the classes was not ascertainable.[9]

Similar to the consumer protection claims, plaintiffs also did not undertake the exhaustive task of

grouping state laws to demonstrate common questions of law predominated.[10]

Affirming the district court's decision on appeal, the Third Circuit held:

> We agree with the District Court that Appellants have failed to
> provide a sufficient, or virtually any, analysis describing how the
> grouped state laws might apply to the facts of this case. They assert
> only that the differences between the state laws within each group
> are "insignificant or non-existent." (Appellants' Opening Br. at
> 27.) As the District Court held, Appellants must do more than
> provide their own *ipse dixit*, citation to a similar case, and a
> generic assessment of state consumer fraud statutes, to justify
> grouping. Thus, it was not an abuse of discretion for the District
> Court to find that Appellants had not carried their burden to show
> that grouping was workable, and that, consequently, the variations
> in state laws precluded the proposed groups.[11]

The Third Circuit's decision was based on the unremarkable, well-settled position that

"class action movants must creditably demonstrate, through an 'extensive analysis' of state law

variances, 'that class certification does not present insuperable obstacles.'"[12] Thus, the Third

Circuit reiterated, as it stated in *Sullivan*:

---

[9] *Id.* at \*\*48-52.

[10] *Id.* at \*52. *See also id.* at \*\*67-68 (for one of the classes, "Simply put, no effort has been made to establish that the Rule 23(b) requirements of predominance and superiority can be met."); *id.* at \*84 ("Plaintiffs' argument for certification of the [] Class to pursue this [unjust enrichment] claim is completely undeveloped.").

[11] *Grandalski*, 767 F.3d at 184.

[12] *Id*. at 183-184 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[T]o establish commonality of the applicable law, nationwide  class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'") and *citing Klay v. Humana, Inc*., 382 F.3d 1241, 1262 (11th Cir. 2004) ("The burden of showing uniformity or the existence of only a small number of applicable standards (that is, 'groupability') among the laws of the fifty states rests squarely with the plaintiffs.") (abrogated on other grounds).

> [W]e endorsed the general procedure of grouping multiple state
> laws into a few categories for the purposes of class litigation.
> There we stated that, '[w]e [have] emphasized our willingness to
> certify nationwide classes where differences in state law fell 'into a
> limited number of predictable patterns,' and any deviations 'could
> be overcome at trial by grouping similar state laws together and
> applying them as a unit.'[13]

Ultimately, the Third Circuit concluded:

> We agree with the District Court and conclude that while grouping,
> in general, may be a permissible approach to nationwide class
> action litigation, in this case Appellants did not provide enough
> information or analysis to justify the certification of the classes
> they proposed. For example, in *In re Prudential*, we noted that "the
> grouping proposal there consisted of a 'series of charts setting forth
> comprehensive analyses of the various states' laws potentially
> applicable to their common law claims.' 148 F.3d 283, 315 (3d
> Cir. 1998) (internal quotation marks omitted). Such in-depth
> treatment justified the District Court's decision to group state laws
> in that case, but is lacking here." [14]

Unlike *Grandalski*, Plaintiffs here have undertaken the exhaustive analysis of state unjust

enrichment law required by the Third Circuit, excluded those states whose laws are not amenable

to grouping, and sought certification of two groupings, carefully selected as the result of

intensive research into state unjust enrichment law.

**B.      Plaintiffs' Extensive Analysis of Facts and Law**

Plaintiffs conducted an extensive analysis of the facts showing why Cephalon's conduct

was unjust and could be proven on a class wide basis using common evidence.  Here, there is no

real dispute that Plaintiffs conferred a benefit upon Cephalon, through the payment of Actiq for

non-cancer patients, and Cephalon appreciated the benefit.[15]

---

[13] *Grandalski*, 767 F.3d at 183 (quoting *Sullivan*, 667 F.3d at 301) (alterations in
original).

[14] *Id.* at 183.

[15] *See* Mem. Supp. Pls. Mot. Class Cert. at 32; *In re Actiq Sales & Marketing Practices
Litig,* 790 F. Supp. 2d 313, 330 (E.D. Pa. 2011) ("The record reflects that Plaintiffs, third-party

Further, Cephalon's own documents provide the circumstances making it inequitable for Cephalon to retain this benefit, i.e. Cephalon's implementation of a wide-reaching scheme to push Actiq for non-cancer patients, its refusal to halt off-label sales, and to cause third-party payors to pay for those prescriptions.[16]  The evidence obtained here confirms that the FDA only approved Actiq for breakthrough cancer pain in cancer patients and required Cephalon to monitor prescriptions and actively discourage non-cancer prescriptions.[17]  Ignoring the serious risks of Actiq, and using a "pain is pain" mantra, Cephalon implemented a nationwide marketing strategy to push Actiq specifically for non-cancer pain, such as through requiring the company's sales representatives to focus on non-cancer treating physicians to stimulate Actiq sales and paying third-parties to market Actiq for non-cancer uses.[18]  To continue to reap non-cancer sales, Cephalon refused to monitor or report the number of off-label prescriptions to the FDA and purposefully failed to implement an educational campaign to halt off-label sales.[19]  And, to ensure that Plaintiffs and the members of the class would pay for Actiq, Cephalon's documents confirm that it purposefully implemented its marketing scheme "under the radar" of class members.[20]  Cephalon's own analyses even confirmed that its off-label marketing caused Actiq sales to grow throughout the class period.[21]

---

payors, bestowed upon Defendant a monetary benefit in the form of payments for Actiq for the members of Plaintiffs, and that Defendant has retained this benefit.").

[16] *Id.* at 32-33.

[17] Proffer of Facts in Support of Plaintiffs' Motion for Class Certification at 6-11 ("Proffer of Facts").

[18] *Id*. at 12-40.

[19] *Id*. at 40-53.

[20] *Id*. at 53-58.

[21] Plaintiffs' Rebuttal Proffer of Facts in Support of Plaintiffs' Motion for Class Certification at 3-7.

Plaintiffs' class certification presentation also included detailed analyses into the law of unjust enrichment.  In moving for certification of the two alternative classes, the Unjust Enrichment (Restatement) Class and the Unjust Enrichment (Appreciation) Class, Plaintiffs explained how states apply one of four similar definitions of unjust enrichment.[22]  Plaintiffs seek certification of a group of states following the Restatement (First) of Restitution's definition of unjust enrichment and a group of states that follow this definition but have an added element that a defendant "appreciate" the benefit.  Plaintiffs excluded states with potentially different definitions, *e.g.*, four states appearing to require a "connection" between the impoverishment of a plaintiff and the defendant's enrichment and another two states requiring plaintiffs to demonstrate circumstances that reasonably notified a defendant that the plaintiff would expect payment of the benefit conferred.[23]  Plaintiffs also seek certification of states that do not require privity between the party conferring a benefit and the party unjustly enriched, excluding states with that element.[24]  Plaintiffs also excluded eight states calling for misconduct rising to the level of fraud to recover for an unjust enrichment claim.[25]  And, through additional effort developed through the adversary process, Plaintiffs demonstrated how Cephalon's limited attacks on Plaintiffs' groupings analyses were wrong and/or inapplicable.[26]

---

[22] Mem. Supp. Pls. Mot. Class Cert. at 28.

[23] *Id.* (excluding Arizona, Delaware, Louisiana, North Dakota, Texas and Wyoming).

[24] *Id.* (excluding Idaho, New Jersey, North Carolina and Ohio).

[25] *Id.* at 28-29 (excluding Alabama, Michigan, Minnesota, Mississippi, Montana, Oregon and Virginia).

[26] Reply Supp. Mot. Class Certif. at 26-34.

001936-11 734525 V1

### III.   ANALYSIS

**A.   Unlike in *Grandalski*, Plaintiffs Presented the Exhaustive Analysis and Groupings of State Law Required by the Third Circuit.**

In *Grandalski*, the plaintiffs failure to perform the detailed unjust enrichment law analysis completed by the *Actiq* Plaintiffs led directly to denial of class certification.

First, the Third Circuit explained that "the District Court applied the choice of law rules of the forum state, New Jersey, to determine the controlling law," and the parties did "not dispute that an actual conflict exists between New Jersey consumer fraud law and the consumer protection laws of other states."[27]   On appeal, the *Grandalski* plaintiffs asserted that "the District Court erred in concluding that the laws of putative class members' home states controlled the state law claims."[28]   The dispute and record here is significantly different.   First, Plaintiffs contend – backed by the law and facts of the case – that Pennsylvania law should apply because Pennsylvania has the greatest interest in having its law applied.[29]   Second, the parties dispute whether an actual conflict of unjust enrichment law in fact exists among the states.   While Cephalon claims that material conflicts exist, this Court already found "that there is no actual conflict between the laws concerning unjust enrichment claims, and the parties have not presented an issue concerning choice of law for these claims," adding "[i]t is established that there are minimal actual differences between the unjust enrichment laws in each of the 50 states."[30]

---

[27] *Grandalski*, 767 F.3d at 180.   Both the district court and the Third Circuit focused on choice of law issues associated with the plaintiffs' consumer fraud claim, which Plaintiffs here do not seek to certify.   Thus, any potential applicability of *Grandalski* is further weakened by the lack of analysis specifically applicable to the unjust enrichment claims presented here.

[28] *Id*. at 180.

[29] *See* Mem. Supp. Pls. Mot. Class Cert. at 20-24; Reply Supp. Mot. Class Cert. at 23-26.

[30] *In re Actiq,* 790 F. Supp. 2d at 322 (footnotes and citations omitted).

Moreover, there are only a few disputes between the parties as to differences among the state laws. In its briefing, Cephalon cites only snippets of case law in opposing class certification, thereby conceding that the accuracy of the majority of Plaintiffs' analysis of unjust enrichment law.[31] For the minority of states challenged by Cephalon, on reply, Plaintiffs analyzed each state's law, demonstrating how common questions of law still predominate, often because Cephalon's legal analysis was wrong.[32]

Further, unlike the plaintiffs in *Grandalski*, Plaintiffs here have produced extensive work to show similarities among state unjust enrichment laws. Faced with the application of the law of multiple states, the *Grandalski* plaintiffs requested grouping, but only provided a "citation to and brief discussion of the [*In re Pharmaceutical Industry Wholesale Price Litigation,* 252 F.R.D. 83 (D. Mass. 2008)], which certified a multi-state consumer fraud class using grouping] opinion and an exhibit providing the National Consumer Law Center's 2009 analysis of the various state consumer fraud statutes."[33] In addition, the plaintiffs did not "demonstrate how this grouping would apply to the facts and issues presented by this case, such that a trial involving dozens of statutes would be rendered manageable."[34] On appeal, the Third Circuit reiterated the feasibility of grouping – if done right – but agreed with the district court that an in-depth treatment of the issues was not provided [35]

---

[31] Def.'s Mem. Law Opp. Pls. Mot. Class Certif. at 46-49.

[32] Reply Supp. Mot. Class Certif. at 26-34. *See also* Ex. 19 to Declaration of Daniel J. Kurowski in Support of Plaintiffs' Reply (demonstrating that Cephalon's legal analysis is incorrect).

[33] *Agostino*, 2010 U.S. Dist. LEXIS 135310 at *36-37.

[34] *Id.* at *37.

[35] *Grandalski*, 767 F.3d at 183. For these same reasons, the cases cited by Cephalon in Footnote 3 of its notice are readily distinguishable as well. This Court has already ruled on the actual conflict issue and Plaintiffs' groupings analysis survives scrutiny.

In their class certification papers, Plaintiffs here did not simply cite to *AWP*.[36]  Instead,

Plaintiffs rolled up their sleeves, and conducted an in-depth analysis of the law of each of the 50

states and the District of Columbia, presenting them to the Court in charts and tables.[37]  Plaintiffs

then applied this research to show how common questions of fact and law predominate.[38]  Again,

Plaintiffs began with a nationwide class, then refined the class to exclude states with potentially

different definitions for unjust enrichment, or requiring privity or misconduct on the part of the

unjustly enriched.[39]  Moreover, to explain the feasibility of a class wide trial, Plaintiffs filed a

trial plan to justify the Court's conclusion that a single trial can be efficiently and manageably

conducted on the unjust enrichment claim.[40]

**B.     The Detailed Evidentiary Submission by Plaintiffs in *Actiq* Is Far Different From The Lack of Allegations In *Grandalski*.**

The plaintiffs in *Grandalski* argued that by billing customers in excess of the financial

responsibility set by insurers, Quest defrauded the customers into paying more than they owed.[41]

But the district court (and the Third Circuit by extension) found the Plaintiff's allegations

lacking.  While the plaintiffs alleged "an improper result – some patients were billed over the

EOB amount after the EOB issued," they did "not allege ***how Quest created that result*** as part of

a scheme to defraud customers," failing "to articulate what fraudulent scheme was allegedly

---

[36] The *Actiq* Plaintiffs note that their counsel of record, Hagens Berman Sobol Shapiro LLP, was also counsel of record for plaintiffs in the *In re Pharmaceutical Industry Wholesale Price Litigation.*

[37] *See* Exs. 12-13 to the Declaration of Daniel J. Kurowski in Support of Plaintiffs' Motion for Class Certification; Pls. Mem of Law Supp. Mot Class Cert. at 30.

[38] Pls. Mem of Law Supp. Mot Class Cert. at 24-38; Reply Supp. Pls. Mot. Cert. at 26-34.

[39] *See supra* at 7-8.

[40] *See* Pls. Mem of Law Supp. Mot Class Cert. at 38-39; Ex. 191 to Declaration of Daniel J. Kurowski in Support of Plaintiffs' Motion for Class Certification (Plaintiffs' Proposed Trial Plan for Unjust Enrichment Claims).

[41] *Agostino*, 2010 U.S. Dist. LEXIS 135310 at *41.

perpetrated by Quest."[42]  Thus, the plaintiffs did not persuade the court "that simply paying a bill that charged an amount above an EOB's statement of patent responsibility necessarily corresponds to a wrongful act by Quest."[43]

In stark contrast, Plaintiffs here have presented detailed facts, illuminating precisely how Cephalon purposefully intended and created the unjust result and was unjustly enriched.  Thus, extensive evidence of Cephalon's wrongful acts exists here that establish that questions of fact concerning class-wide liability predominate, distinguishing this case from *Grandalski.*  And, as this Court correctly recognized:  "The notion that [Cephalon's] comprehensive marketing scheme had no effect on physicians and third parties, such that their selection of Actiq was wholly unforeseeable by Defendant, is unrealistic" particularly where "Defendant markets aggressively with the intent that, as a result of their efforts, physicians will prescribe their product."[44]

### IV.    CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion For Class Certification, and all such other relief the Court deems necessary and appropriate.

---

[42] *Id.* at *47.  To be clear, a showing of fraud is not required to maintain an unjust enrichment claim.  Pls. Mem. Supp. Mot. Class Cert. at 28-29 (noting how Plaintiffs have excluded states requiring that a plaintiff show misconduct rising to the level of fraud to recover). Of course, Cephalon's actions do rise to such a level of misconduct.  *See id.* at 29 n.20 (citing Cephalon's guilty plea agreement).

[43] *Agostino,* 2010 U.S. Dist. LEXIS 135310 at *50.  *See also id.* at *51-52 (applying this analysis to the plaintiffs' unjust enrichment claim).

001936-11  734525 V1

DATED:  December 11, 2014                Respectfully submitted,


                                         By:_/s/ *Steve W. Berman*_____
                                         Steve W. Berman, Esq.
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1918 8th Ave., Suite 3300
                                         Seattle, WA 98101
                                         (206) 623-7292
                                         (206) 623-0594 (fax)
                                         E-mail: steve@hbsslaw.com

                                         Elizabeth A. Fegan, Esq.
                                         Daniel J. Kurowski, Esq.
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1144 W. Lake St., Suite 400
                                         Oak Park, IL 60301
                                         (708) 628-4960
                                         E-mail: beth@hbsslaw.com
                                         E-mail: dank@hbsslaw.com

                                         *Chair of the Lead Counsel Committee*

                                         Joseph H. Meltzer, Esq.
                                         Terence S. Ziegler, Esq.
                                         Casandra A. Murphy, Esq.
                                         KESSLER TOPAZ MELTZER & CHECK
                                         280 King Of Prussia Road
                                         Radnor, PA 19087
                                         (610) 667-7706
                                         E-mail: jmeltzer@ktmc.com
                                         E-mail: tziegler@ktmc.com
                                         E-mail: cmurphy@ktmc.com

                                         William N. Riley, Esq.
                                         Joseph N. Williams, Esq.
                                         Brad Catlin, Esq.
                                         PRICE WAICUKAUSKI & RILEY
                                         301 Massachusetts Avenue
                                         Indianapolis, IN 46204
                                         (317) 633-8787
                                         E-mail: wriley@price-law.com
                                         E-mail: jwilliams@price-law.com
                                         E-mail: bcatlin@price-law.com

                                         *Members of Lead Counsel Committee*


- 11 -

001936-11  734525 V1

- 12 -

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 11, 2014, a true and correct redacted copy of the foregoing was filed via CM/ECF, which caused notice to be delivered to all counsel of record.

/s/ *Steve W. Berman*

001936-11 734525 V1